UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHRISTINE THOMAS,

               Plaintiff,

vs.　　　　　　　　　　　　　Case No. 2:07-cv-730-FtM-29SPC

BOMBARDIER RECREATIONAL PRODUCTS, INC.,

               Defendant.
_____

**OPINION AND ORDER**

     This matter comes before the Court on defendant's Motion for Partial Summary Judgment (Doc. #30) filed on August 13, 2009. Plaintiff filed a Memorandum of Law in Opposition (Doc. #32) on August 27, 2009, and defendant filed a Reply (Doc. #37) on September 8, 2009, with leave of Court.

**I.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue at to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id.

In ruling on a motion for summary judgment, the Court is required to consider the evidence in the light most favorable to

the nonmoving party, in this case, the Plaintiff. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000); Jaques v. Kendrick, 43 F.3d 628, 630 (11th Cir. 1995). The Court does not weigh conflicting evidence or make credibility determinations. Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Tullius v. Albright, 240 F.3d 1317, 1320 (11th Cir. 2001)(citing Clemons v. Dougherty County, 684 F.2d 1365, 1369 (11th Cir. 1982)).

## II.

On May 20, 2007, Christine Thomas (plaintiff or Thomas), who was 18 at the time, met some friends for breakfast and then went to Vanderbilt Beach to tan and go in the water before work that day. While at the beach, Thomas saw James Del Sordo (James) and Samantha Smith (Samantha). James and Samantha had been riding personal watercraft (PWC), and Thomas and a friend asked if they could go for a ride. Thomas's friend had been on a PWC previously, but Thomas had not and told this to James. James and Samantha took Thomas and her friend to meet George Smith and his wife, owners of the PWCS, to obtain permission to ride. They were granted permission and handed life jackets. The PWCs were 2006 Bombardier RXT Personal Watercraft (PWC) made by defendant Bombardier Recreational Products, Inc. (defendant or Bombardier).

Thomas, wearing a bikini bathing suit and life jacket, was the passenger and rode with her arms around James's waist, holding his life jacket straps. They rode at no more than 30 to 40 miles an hour, and with no drastic turns or jumping until Thomas lost her grip for some unknown reason and fell backwards off the PWC. After falling into the water, James and the other PWC turned and came back to her, thinking nothing of the fall. James noticed blood in the water and said "I think you're bleeding." Thomas felt like there was a lot of water in her stomach and could not move her legs. Thomas' friend jumped in to help and Samantha lifted her out of the water and onto her PWC to ride back to shore. Once on shore, Thomas was laid down on the beach and an ambulance was called. Thomas was airlifted to Lee Memorial Hospital where she was treated and had several surgeries.

Plaintiff did not recall seeing any warning labels, did not recall anything that prevented her from seeing a warning label, was not advised of a warning label, and did not read any warning labels or instructions prior to boarding the PWC. Located directly below the handlebars of the PWC, in front of the driver, the warning label reads in part:

WARNING

To reduce the risk of SEVERE INJURY DEATH:

WEAR PROTECTIVE CLOTHING. Severe internal injuries can occur if water is forced into body cavities as a result of falling into water or being near jet thrust nozzle. Normal swimwear does not adequately protect against forceful water entry into lower body opening(s) of males

>or females. All riders must wear a wet suit bottom or clothing that provides equivalent protection (ss Operator's Guide). Footwear, gloves, and goggles/glasses are recommended.

The Warning also has a picture depicting a woman wearing a wet suit bottom and personal flotation device. The Operator's Guide further provides:

> **To Wear**
>
> . . .
>
> The operator and passenger(s) of [Personal Watercrafts] must wear protective clothing, including:
>> - A wet suit bottom or thick, tightly woven, snug fitting clothing that provides equivalent protection. Thin bike shorts for example would not be appropriate. Severe internal injuries can occur if water is forced into body cavities as a result of falling into water or being near jet thrust nozzle. Normal swimwear does not adequately protect against forceful water entry into the lower body opening(s) of males or females.

A picture on the next page demonstrates the appropriate protective clothing.

### III.

The First Amended Complaint (Doc. #10) alleges that when plaintiff fell into the water "she was violently struck by the jet blast emanating from jet nozzle of the PWC." (Doc. #10, ¶10.) Count I alleges a negligence claim setting forth eighteen ways in

which defendant failed to act within its duty of care, while Count II alleges a strict liability claim setting forth the same eighteen ways defendant failed to act within its duty of care.

Defendant seeks summary judgment on three of the eighteen enumerated violations in each count. Two violations relate to a duty to warn. The First Amended Complaint alleges at ¶¶ 14(g) and 21(y) that defendant:

> failed to adequately and properly warn operators and/or passengers of the PWC about the foreseeable dangers of catastrophic injury, given the existing jet pump assembly and jet blast of said PWC;

Similarly, ¶¶ 14(m) and 21(ee) allege that defendant

> failed to provide a warning to the passenger concerning the possibility that if a passenger fell off the PWC while not notifying the driver, the excessive force from the thrust of the PWC engine could harm the plaintiff;

The third violation on which summary judgment is sought alleges in ¶¶ 14(h) and 21(z) that defendant:

> violated federal regulations, standards, and statutes pertaining to the obligations of consumer product Manufacturers to recall and make modifications to a product after the manufacturer knows or should have known of a defective feature in such product;

(Doc. #10.)

**A. Strict Liability Failure to Warn:**

The Court has previously set forth the legal principles for failure to warn under strict liability in <u>Pinchinat v. Graco Children's Prods., Inc.</u>, 390 F. Supp. 2d 1141, (M.D. Fla. 2005). These legal principles have not changed. To establish strict liability for failure to warn, plaintiff must prove that defendant

(a) is a manufacturer or distributor of the product at issue, and (b) did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the manufacture and distribution. Ferayorni v. Hyundai Motor Co., 711 So. 2d 1167, 1172 (Fla. 4th DCA 1998). "[T]o warn adequately, the product label must make apparent the potential harmful consequences. The warning should be of such intensity as to cause a reasonable man to exercise for his own safety caution commensurate with the potential danger." Scheman-Gonzalez v. Saber Mfg. Co., 816 So. 2d 1133, 1139 (Fla. 4th DCA 2002)(citing American Cyanamid Co. v. Roy, 466 So. 2d 1079, 1082 (Fla. 4th DCA 1984)). Additionally, "[a] warning should contain some wording directed to the significant dangers arising from failure to use the product in the prescribed manner, such as the risk of serious injury or death." Id. The sufficiency and reasonableness of the warnings are questions of fact best left for the jury unless the warnings are accurate, clear, and unambiguous. Scheman-Gonzalez, 816 So. 2d at 1139-40. An instruction is not a warning. Brown v. Glade & Grove Supply, 647 So. 2d 1033, 1036 (Fla. 4th DCA 1994).

It is not disputed that defendant Bombardier was the manufacturer of the PWC at issue. The summary judgment issue relates to the warning and its adequacy.

The Court finds that the warning in this case is clear, specific, and unambiguous. The Warning label warns of "severe

injury death" and specifies that "[s]evere internal injuries can occur if water is forced into body cavities as a result of falling into water or being near jet thrust nozzle. Normal swimwear does not adequately protect against forceful water entry into lower body opening(s) of males or females." The Warning label goes on to provide instructions on appropriate attire: "All riders must wear a wet suit bottom or clothing that provides equivalent protection." The Warning label clearly states that the specific injury that plaintiff suffered could occur if precautions were not taken. Therefore, with regard to ¶¶ 14(g) and 14(m), the Court finds that there was a warning and it accurately, clearly, and unambiguously warned riders, including a passenger, of the foreseeable dangers of catastrophic injury.

While the adequacy of the Warning is established as to its content, there is an issue which precludes summary judgment as to the two failure to warn paragraphs. Plaintiff argues that no warning was provided to the passenger or placed in a location designed to reach the passenger, and therefore the warning, even if adequately worded, is inadequate on this basis. "A warning may be defective not only by virtue of inadequate wording, but as a result of its location and the manner in which the warning is conveyed." Brown v. Glade & Grove Supply, Inc., 647 So. 2d 1033, 1035 (Fla. 4th DCA 1994). "[A] warning is adequate if it is communicated by means of positioning, lettering, coloring, and language that will convey to the typical user of average intelligence the information

necessary to permit the user to avoid the risk and to use the product safely." Stanley Indus., Inc. v. W.M. Barr & Co., Inc., 784 F. Supp. 1570, 1575 (S.D. Fla. 1992)(citation omitted). Since the PWC was constructed to accommodate two riders, and the Warning was arguably placed where only the driver could readily observe it, the Court finds that a jury question exists as to the adequacy of the Warning based upon its placement.

**B. Negligence, Failure to Warn:**

Defendant also asserts that the failure to warn claims as to both strict liability and negligence are precluded by a lack of causation in light of plaintiff's admission that she did not read the Warning. It is certainly correct that a person who did not read a warning label is precluded from challenging the adequacy of the warning or from claiming that the allegedly inadequate warning proximately caused her any damage. Lopez v. Southern Coatings, Inc., 580 So. 2d 864, 865 (Fla. 3d DCA 1991)("Where the person to whom the manufacturer owed a duty to warn . . . has not read the label, an inadequate warning cannot be the proximate cause of the plaintiff's injuries."); Ashby Div. of Consol. Aluminum Corp. v. Dobkin, 458 So. 2d 335, 337 (Fla. 3d DCA 1984)(where plaintiff did not read the warnings, "any failure to warn could not, as a matter of law, be the proximate cause of plaintiff's injuries."). However, as defendant notes (Doc. #30, p. 14), when plaintiff cannot read the label due to the fault of the manufacturer her failure to warn theory can be viable. Stanley, 784 F. Supp. At

1574. Here, there is a jury issue as to the placement of the Warning, which in turn impacts whether the failure to read the Warning was due to the fault of the manufacturer. Summary judgment therefore cannot be granted on this basis.

**C. Failure to Recall/Retrofit:**

Defendant seeks summary judgment on that portion of the claims which asserts that it "violated federal regulations, standards, and statutes pertaining to the obligations of consumer product Manufacturers to recall and make modifications to a product after the manufacturer knows or should have known of a defective feature in such product." Defendant argues that Florida law does not recognize such a duty to recall or retrofit a product and that there is no evidence of a voluntary undertaking or government agency mandate to recall the product. (Doc. #30, pp. 16-18.)

Plaintiff does not dispute defendant's argument that Florida law does not recognize that a manufacturer has a post-sale duty to recall or retrofit a product, but argues that defendant assumed such a duty and then failed to perform it. (Doc. #32, p. 12.) Plaintiff bases her assumption of a duty argument on a provision in the Operator's Guide which agrees to provide owners with a free replacement Warning label. Plaintiff argues that this assumption of a lifetime duty to provide replacement Warning labels created a duty to revise the labels and recommend placement of the labels at locations that would cause the communication to reach the passenger.

-9-

Plaintiff's arguments are rejected, and summary judgment will be granted as to these paragraphs. First, plaintiff's argument concerning an assumption of a duty to replace labels does not support its allegation in the First Amended Complaint of a duty to recall or retrofit the PWC based on an existing legal requirement. Second, the assumption of a duty to provide a replacement warning label does not assume or create a duty to change that label or to made additional recommendations regarding placement. Plaintiff simply places far more weight on this replacement provision than it will bear.

Accordingly, it is now

**ORDERED:**

Defendant's Motion for Partial Summary Judgment (Doc. #30) is **DENIED IN PART AND GRANTED IN PART**. Defendant's Motion is granted as to the adequacy of the Warning language in ¶ 14(g) and (m) and 21(y) and (ee) of the failure to warn claims in Counts I and II, but is denied as to the issue of placement of the Warning. The Motion is granted as to the duty to recall and retrofit under ¶ 14(h) in Count I and ¶ 21(z) in Count II. The Clerk shall withhold the entry of judgment until the conclusion of the case.

**DONE AND ORDERED** at Fort Myers, Florida, this __21st__ day of January, 2009.

_____
JOHN E. STEELE
United States District Judge

Copies: Counsel of record