UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

CHRISTINE THOMAS

       Plaintiff,

vs.                       CASE NO.:  2:07-CV-00730-JES-SPC

BOMBARDIER RECREATIONAL
PRODUCTS INC.

       Defendant.

_____/

## JOINT PRE-TRIAL STATEMENT

The parties, pursuant to this Court's Case management and Scheduling Order, respectfully submit the following Joint Pre-Trial Statement.

**1.     BASIS FOR FEDERAL JURISDICTION**

Plaintiffs assert that the jurisdiction of the Court is based upon Diversity of Citizenship, 28 U.S.C. §1332.  Venue is proper in this District and Division in accordance with 28 U.S.C. §1391 (b).

**2.     CONCISE STATEMENT OF THE NATURE OF THE ACTION**

This is a product liability case seeking damages for personal injuries sustained by Christine Thomas on May 20, 2007 while riding as a passenger on a 2006 Bombardier Sea-Doo RXT personal watercraft.  Defendant denies liability for Plaintiff's claims and have asserted a number of affirmative defenses.

**3.**     <u>**BRIEF STATEMENT OF EACH PARTY'S CASE**</u>

   **A.**     **Statement of the Case of Plaintiff**

      **1.**     **The Accident**

         This is a product liability case for personal injuries sustained by Christina Thomas against the Bombardier Recreational Products the manufacturer of a 2006 Sea-Doo RXT personal watercraft or Jet Ski. The PWC is propelled by a powerful water jet thrust or blast ejected from the jet nozzle located below water level in the center rear area of the PWC. The PWC was purchased used from the original owner by George Smith. On Sunday, May 20, 2007 Mr. Smith brought his two PWC's to Vanderbilt Beach in Naples FL. At that time the Plaintiff Christina Thomas was 18 years of age (DOB: 05/15/1989) and was about to complete her junior year of high school. It was Memorial Day weekend and Christina and two girlfriends Rachel King and Christina Gonzalez went to the beach. She wore bikini and also brought cloth shorts and a tank top with her. Christina was looking forward to spending as day at the beach, and had absolutely no plans to ride on a personal watercraft that day.

         While sunbathing on the beach, Christina saw James Del Sordo (DOB 7/5/85) and Samantha Smith riding a 2006 Bombardier Sea-Doo RXT personal watercraft (the "PWC").  Ms. Smith, the daughter of PWC-owner George Smith, was an acquaintance of Plaintiff through high school.  Christina knew of Mr. Del Sordo, having seen him around her community and at a restaurant where she was a hostess. When Mr. Del Sordo and Ms. Smith came onto shore; Plaintiff and Ms. King asked if they could go for a ride on the PWCs.  At this point in her life, Christina had never operated or been a passenger on personal watercraft.

         Mr. Del Sordo told Plaintiff that she would have to ask Mr. Smith for permission to let her ride.  Mr. Smith agreed to let Mr. Del Sordo take Christina for a ride and his

daughter take Ms. King for a ride. He told Christina and Ms. King to "be safe and wear a life jacket" but did not provide any additional instruction.  Mr. Smith did not have any conversation with anyone concerning the use of protective gear, such as glove, goggles, and/or wearing a wet suit bottoms or equivalent protective clothing.

Christina told Mr. Del Sordo that she had never ridden a personal watercraft before.  Mr. Del Sordo told her that "… we will go slow. I was like, "I'll make sure, you know, we won't go crazy and I will tell you exactly what I'm doing," so that she would not fall off." He told Christina to hold onto the straps on his life jacket, one of the procedures that Bombardier recommends for passengers. Mr. Del Sordo did not know prior to the accident that severe internal injuries can occur if jet blast water is forced into body cavities as a result of falling into water or being near jet thrust nozzle, that normal swimwear does not adequately protect against forceful water entry into lower body openings and that all riders must wear a wet suit bottom or clothing that provides equivalent protection. Therefore, did not tell Christina to wear protective clothing.

Mr. Del Sordo located the PWC in shallow water, and was seated in the operator's position when Christina boarded the PWC. Christina sat directly behind Mr. Delsordo with her legs straddling the center mounted seat. Once aboard, she held onto Mr. Del Sordo's life vest as Mr. Del Sordo slowly accelerated away from shore. Approximately two (2) minutes later while approximately 100 yards from the beach, Christina "lost her grip" and slid backwards and was ejected rearward into the Gulf of Mexico. Christina did not strike any portion of the PWC. However, the water jet blast from the PWC's jet nozzle forced sea water into Christina's rectum and vagina. As a result of this impact from the jet blast, Christina experienced immediate severe abdominal vaginal and rectal pain and bleeding.  Mr. Del Sordo immediately saw blood in the ocean.  Mr. Del Sordo flagged down Ms. Smith, who was operating another Sea-Doo nearby and together the rescued Christina from the ocean.  Once safely ashore, fire rescue was

3

summoned and Christina transported to a nearby hospital.

Christina suffered severe vaginal and rectal injuries as the result of those body parts being impacted by the water jet expelled from the jet nozzle of the PWC manufactured by the Defendant.  It was determined that she has sustained a serious internal laceration to her rectum whit damage to her external sphincter and right pudendal nerve, as a result of her coming into contact with the jet pressure emanating from the rear of the PWC. Due to the serious nature of the injuries sustained by Christina the doctors performed a colostomy which diverted her fecal contents to an external colostomy bag.  In December of 2007, the colostomy was surgically reversed. Subsequent to the reversal surgery, by Dr. Susan M. Cera, Christina continues to experience occasional fecal incontinence.

2.      **The Lawsuit**:

Christina Thomas contends that the 2006 SEA-DOO RXT Personal Watercraft was defectively designed and manufactured and that said defect(s) caused her to be severely and permanently injured. The court has ruled that the content of the warning label located on the center console below the handle bar and directly in front of the operator is not an issue. The court stated in its opinion that the vessel is a designed for two passengers. As such issue for the jury's determination is whether the PWC is defective because Bombardier chose a location for the warning label that would not be readily observable to the potential passenger. The Plaintiff contents that the passenger warning should be located on the seat and or on the hand strap that traverses the seat.   Under Florida products liability law, a warning is adequate if it is communicated by means of positioning, lettering, coloring, and language that will convey to the typical user of average intelligence the information necessary to permit the user to avoid the risk and to use the product safely. *Stanley Indus., Inc. v. W.M. Barr & Co., Inc.,* 784 F.Supp. 1570, 1575 (S.D.Fla.1992) (citation omitted). Since the PWC was constructed to accommodate two riders, and the Warning was arguably placed where only the driver could readily observe it,

the Court finds that a jury question exists as to the adequacy of the Warning based upon its placement. *See Thomas v. Bombardier Recreational Products, Inc.*, 682 F.Supp.2d 1297, 1301 (M.D. Fla. 2010)

Again, this is a product liability case based on strict liability in tort and negligence. Specifically, the Plaintiff will offer extensive factual and expert testimony with respect to the design of the PWC in question. Further, the Plaintiff will offer expert proof that the instructions and warnings accompanying the PWC in question were defective and caused the PWC to be wholly defective and unreasonably dangerous.

The Plaintiff will provide expert testimony that the PWC should have been designed to prevent a passenger such as Christina Thomas from slipping off the back and being exposed to this significant jet blast emanating from the rear of the PWC. Specifically, the PWC should have been equipped with a passenger safety lanyard designed to cut the engine if a passenger slips off the rear of the craft, or a passenger seat back designed to prevent a passenger from slipping off the rear of the PWC and being impacted by the jet blast. Finally, the Plaintiff will offer expert proof that the PWC in question was further defective in that Bombardier failed to place a warning label in a location specifically designed to cause the ultimate user, in this the passenger to see it.

As a result of the serious injuries sustained by Christina Thomas, she has suffered and will continue to suffer in the future pain and suffering and mental anguish.

**B.** **Statement of the Case of Defendant**

**1.** **The Accident**

The facts leading up to Plaintiff's accident are, for the most part, straightforward and undisputed.  It happened on the Sunday of Memorial day weekend, 2007. That morning, Plaintiff and her and friends Rachel King and Christina Gonzalez went to Vanderbilt Beach.  Plaintiff had no plans to ride on a personal watercraft that day.  She dressed

in a bikini, and also brought cloth shorts and a tank top.  The weather was sunny, with good visibility.

At the beach, Christina saw James Del Sordo and Samantha Smith riding a 2006 Bombardier Sea-Doo RXT personal watercraft (the "PWC").  Ms. Smith, the daughter of PWC-owner George Smith, was an acquaintance of Plaintiff through high school.  Plaintiff had known Mr. Del Sordo for about one year before the accident.  When Mr. Del Sordo and Ms. Smith came onto shore; Plaintiff and Ms. King asked if they could go for a ride on the PWC.  At this point in her life, Plaintiff had no experience operating or riding on personal watercraft.

Mr. Del Sordo told Plaintiff that she would have to ask Mr. Smith for permission to let her ride.  Mr. Smith, who did not know either Plaintiff or Ms. King, approved.  He advised Plaintiff and Ms. King to "be safe and wear a life jacket" but did not provide any additional instruction.  He never told them that they must wear wet suit bottoms or equivalent protective clothing in order for them to ride.  Nor did he ask Plaintiff about her experience level riding PWCs.  Likewise, he did not give Mr. Del Sordo – an experienced personal watercraft operator – any safety instructions to provide Plaintiff.

Mr. Del Sordo, for his part, knew that Plaintiff had never ridden a personal watercraft before.  He assured her he would operate the PWC "more calmly" so that she would not fall off.  Before the ride, Mr. Del Sordo's only instructions were for Plaintiff to hang on to his life jacket.  He did not tell her to wear protective clothing.  He did not show her the on-product warning located under the steering handlebars.  Although this warning cautions that "All riders must wear a wet suit bottom or clothing that provides equivalent protection," Plaintiff boarded the PWC wearing only her two-piece bathing suit.

Once aboard, Plaintiff held onto Mr. Del Sordo's life jacket as they entered the waterway.  The seas were between 2 - 4 feet, and the PWC was traveling at approximately 30-40 miles per hour.  Within perhaps two minutes of operation, Plaintiff "lost her grip" and fell from the rear.  She denies striking any portion of the PWC.  When Plaintiff fell in the water, she felt pain and Mr. Del Sordo immediately saw blood.  He flagged down Ms. Smith, who was operating another Sea-Doo nearby.  Plaintiff was ultimately transported to a nearby hospital.  She suffered vaginal and rectal injuries as the result of her fall.

**2.**     **The Lawsuit:**

Plaintiff now blames Bombardier solely for her injuries.  She contends that the company defectively designed and manufactured the PWC.  The adequacy of the warning label is no longer an issue; the jury question in this matter revolves around placement.  *See Thomas v. Bombardier Recreational Products, Inc.*, 682 F.Supp.2d 1297, 1301 (M.D. Fla. 2010) ("the Court finds that there was a warning and it accurately, clearly, and unambiguously warned riders, including a passenger, of the foreseeable dangers of catastrophic injury.").

As set forth below, Bombardier will establish that the placement of the warning had nothing to do with the accident.  Rather, the accident happened because Mr. Smith failed to adequately instruct Plaintiff or Mr. Del Sordo regarding protective clothing, because Mr. Del Sordo negligently operated the PWC, failed to read and follow the on-product warning label and failed to provide instructions to safely ride the PWC, and because Plaintiff, without justification, failed to read and follow the on-product warning.

**3.** **The Negligence Of The PWC Owner, The PWC Operator And Plaintiff Proximately Caused Her Accident**

    a.   George Smith, The PWC Owner, Failed To Adequately Instruct Plaintiff To Wear Protective Clothing

Mr. George Smith purchased the PWC used in 2004.  The Sea-Doo came equipped with an Operator's Guide, on-product warning labels and safety video.  The on-product warning and safety video instruct all users to read the warnings as well as the Operator's Guide "in order to avoid serious injury or death."  While the on-board warning label conveys important safety warnings, all users must be familiar with the Operator's Guide and its safety instructions.

Mr. Smith will testify that although he used the PWC many times before Plaintiff's accident, he never read the Operator's Guide or on-product warning labels.  Nor did he ever view the safety video anytime before the accident.  He didn't feel it was necessary.  Nor did he feel it necessary to use protective clothing.  He will admit that he was unaware that the Sea-Doo Operator's Guide and on-product warning label required that all users "must wear" protective clothing to prevent "severe internal injuries" when water is "forced into body cavities as a result of falling into water or being near jet thrust nozzle."

Mr. Smith did not require that persons using his PWC, like Plaintiff or Mr. Del Sordo, wear protective clothing.  He will testify that nothing prevented him from reading the on-board warning label or the Operator's Guide and that the warnings contained instructions on how to avoid the type of injuries suffered by Plaintiff.

Mr. Smith believes Plaintiff also could have read the warning, but simply failed to do so.  He recognizes the warnings were clear.  He further acknowledges the necessity for protective clothing, which would prevent against the type of injury sustained by

Plaintiff.  He additionally admits that a PWC operator's primary responsibility is the safety of his or her passengers.  He also admits that had he chosen to read that information prior to the accident, he would have told James and Christina to wear protective clothing.  Accordingly, the jury will have an opportunity to asses fault against Mr. Smith under Florida's comparative fault law.  As the  owner of the subject PWC, Mr. Smith's failure to read and communicate the safety warnings contributed to cause Plaintiff's damages.

     **b.**      **The PWC Operator, James Del Sordo, Negligently Ignored Bombardier's On-Product Warnings, Failed To Instruct Plaintiff To Wear Protective Clothing And Recklessly Operated The PWC**

Mr. Del Sordo was not a novice operator.  With over 100 hours of boating experience, he agrees that the operator of a PWC is responsible for passenger safety.  Indeed, on the date of the accident, Plaintiff trusted and relied on Mr. Del Sordo to:

- advise her how to safely ride the PWC;

- follow all instructions and warnings present on the labels affixed to the PWC;

- safely hold onto the PWC, and

- advise her that he would not go faster than was safe when operating the PWC.

Mr. Del Sordo will admit seeing the "largest warning" on the subject PWC, but will acknowledge that he did not read it.  He never read the Operator's Guide or watched the safety DVD.  He did not advise Plaintiff to wear protective clothing before riding the PWC.  Rather, he simply told her to hold onto his life jacket.  Plaintiff did not ask Mr. Del Sordo for any additional safety instruction before riding the PWC, and Mr. Del Sordo failed to provide any.

On the water, James ran the PWC between 30-40 miles per hour in waves of 2-4 feet.  He has "no idea" why Plaintiff fell from the rear, and does not understand

why the Boating Accident Report stated his inattention caused the accident.  While Mr. Del Sordo denies aggressively maneuvering the subject PWC, the evidence will demonstrate that without aggressive maneuvering, Plaintiff would not have fallen off the subject PWC. Accordingly, a jury will assess Mr. Del Sordo's comparative fault for his aggressive maneuvering of the PWC and his failure to train and instruct Christina Thomas to wear protective clothing.

        c.       <u>Plaintiff Negligently Ignored The Clear Warnings On The PWC</u>

Plaintiff took her first-ever ride on a PWC with a person who was essentially a stranger to her.  She did not know Mr. Del Sordo's boating experience, and didn't ask him before the ride.  Although Plaintiff admits that entrusted her safety to Mr. Del Sordo and relied on him to instruct her about warnings, this reliance was unreasonable.

Despite not knowing Mr. Del Sordo or his boating experience, Plaintiff had ample opportunity to read and follow the on-product warning label.  This warning label is the largest and most prominent warning label on the PWC.   In words and pictures, it conveys a clear message that users must wear protective clothing.  The PWC's design affords operators *and passengers* an opportunity to read the warning label.  Plaintiff will testify that she could have read the warning label and worn protective clothing, but she not to.  She candidly admits that nothing prevented her from reading the warning label on the subject PWC that day.

Accordingly, jury should have an opportunity to assign responsibility to Plaintiff for failing to read the warnings and ask Mr. Smith or Mr. Del Sordo questions regarding the PWC's safe operation and use before her injury.

**4.**     **The PWC Was Not Defective**

At trial, Bombardier will refute Plaintiff's allegations of product defect. With respect to the alternate designs offered by Plaintiff, Bombardier will demonstrate through its corporate representatives and engineering experts that neither the passenger safety lanyard nor the passenger seat back proposed by Plaintiff are feasible alternatives and that the putative alternative designs actually *increase* the risk of injury to Sea-Doo users.

Similarly, Bombardier will demonstrate Plaintiff's contentions about defect due to the conspicuousness of its on-product warning label.  Through the testimony of its corporate representatives and experts, Bombardier will demonstrate that both before and after boarding the PWC, Plaintiff had a clear opportunity to read and follow a warning which this Court, and Plaintiff's expert, have characterized as adequate.

With respect to Plaintiff's alleged damages, Bombardier will show through examination of Plaintiff's witnesses, its expert colorectal surgeon, Dr. Sharon Gregorcyk and its vocational rehabilitation expert Ro Baltayan that Plaintiff had a good recovery following her colostomy reversal and that she has no restrictions or limitations with respect to vocation.

**4.**     **EXHIBITS**

**A.**     **Joint Exhibits**

At this time, the parties are not offering any joint exhibits.  The parties further stipulate that any joint exhibit deemed admissible may be published to the Court, subject to leave of Court, by power point, overhead projector, blow up, or any other acceptable means of publication.

**B.**     **Plaintiff's Exhibits**

Plaintiff's exhibits are set forth on Attachment A. Defendant's objections to Plaintiff's exhibits are set on Attachment B.[1]

**C.**     **Defendant's Exhibits**

Defendants' exhibits are set forth on Attachment C. Plaintiff's objections to Defendants' exhibits are set forth on Attachment D.[2]

**5.     LIST OF ALL WITNESSES WHO MAY BE CALLED AT TRIAL**

**A.     Plaintiff's Witnesses**

A list of Plaintiff's witnesses who may be called at trial is set out in Attachment E.

**B.     Defendant's Witnesses**

A list of Defendant's witnesses who may be called at trial is set out in Attachment F.

**6.     LIST OF ALL EXPERT WITNESSES**

**A.     Plaintiff's Expert Witnesses**

**1.     Michael Burleson, PE**

Mr. Burleson's video deposition was taken on September 8, 2010. Mr. Burleson is a professional engineer and a certified safety professional engineer.Mr. Burleson will testify that the 2006 Sea-Doo RXT is unreasonably dangerous and defective. He will discuss the statistical history of injection injuries based on his thorough knowledge of personal watercraft accident

---

[1] At this time, Bombardier has yet to receive Plaintiff's exhibits and so has prepared its objections based on Plaintiff's list. If appropriate, Bombardier will supplement its objections after received the exhibits.

[2] At this time, Plaintiff did not have his objections, and will supplement this filing.

reporting. Mr. Burleson will testify that there are two design features that could have been incorporated into the PWC that may have prevented this devastating injury. First, a passenger safety lanyard; and second a passenger seat back.  These two safety feature are feasible designs and would have reduced the risk of injury to Sea-Doo passengers.   Mr. Burleson has conducted significant prior testing and analysis on substantially similar personal watercrafts. Mr. Burleson will testify with respect to the history of personal watercrafts in this country. Mr. Burleson will testify that as the popularity of personal watercrafts has increased, injuries have also increased as a result of passengers falling from the watercraft during operation or take-off when jet nozzle water pressures are at high levels. Mr. Burleson will explain that jet thrust injuries occur repeatedly and regularly. After recognizing this problem, Mr. Burleson began to evaluate the potential effectiveness of utilizing a passenger safety lanyard to kill the engine during ejection of a passenger. This type of protection is already afforded to the operator, as the operator is equipped with a lanyard that will connect to either the wrist or personal flotation device, and a quick disconnect button on the watercraft. A lanyard similar to the operator lanyard could effectively be utilized by a passenger. Indeed, Mr. Burleson has installed and tested such a passenger safety lanyard on the exemplar personal watercraft. This type of lanyard would mitigate injuries caused by high jet stream pressures that occur during take-off and or during power conditions when a passenger falls into the water behind the PWC. The classic method of falling into the water from the rear of the craft places the passenger in a prone and vulnerable position where rectal/vaginal areas will foreseeably be in the path of the jet stream. Testing has shown that the use of a passenger lanyard will stop operation of the engine before the passenger has actually fallen to an injury prone position behind the jet nozzle.

It is also Mr. Burleson's opinion that the use of a seat back for a passenger on the PWC in question would prevent a passenger from falling behind the PWC on take-off and prevent the passenger from being exposed in a vulnerable position to the extremely high water jet force. Mr. Burleson has installed a passenger seat back on the exemplar PWC. Mr. Burleson has also installed such a seat back on other manufacturers' PWC's.

Mr. Burleson will opine that the 2007 Bombardier RXT in question is defective as designed and unreasonably dangerous given the lack of safeguarding of passengers against foreseeable serious rectal/vaginal or other injuries that can occur when a passenger falls from the rear of the craft into the path of the vehicle's jet stream. The design of the PWC is further defective due to the hazard of the jet nozzle protruding significantly past the rear of the craft. This design promotes the likelihood of both physical contact and higher jet pressures during a rearward ejection of the passenger. Mr. Burleson will opine that the PWC designed as a whole is defective because it lacks a design to prevent passengers from sliding off the rear and being exposed to the jet thrust hazard. This can be accomplished by either a passenger safety lanyard or seat back designed to prevent someone from sliding off the rear of the PWC. Mr. Burleson will further opine that the injuries sustained by Christina Thomas were caused by the PWC's jet thrust.

Mr. Burleson has conducted testing with respect to after-market seat backs for PWC's.

### 2.    Edward Karnes, Ph.D.

Dr. Karnes will testify regarding product labeling, instructions, and human factors issues associated with this case as they relate to the facts of the accident, its causation, and Plaintiff's defect and warning claims.  He will testify regarding the adequacy and role of

product warnings and user information on vehicle labels and safety related instructions and information provided with the PWC.  With respect to issues pertinent to this case, Dr. Karnes will testify that Bombardier's system of information, including materials, such as on-product labels, Sea-Doo Operator's Manual, and the Sea-Doo Safety Video/DVD are defective and not reasonable and adequate, not only in terms of content and delivery of the information..

Dr. Karnes will also address issues pertaining to industry standards and customs regarding personal watercraft and their warnings, the relationship of perception and reaction as well as describing how people react in certain situations like in a moment of perceived hazard and the operator's perception and response time before, during and after the accident sequence.  He will additionally consider and respond to assertions regarding the need for and likely impact of proposed additional or different warnings as raised by the Plaintiff's experts on the subject of human factors and warnings and will respond to the opinions, analysis and work performed by Defendant's experts or other lay witnesses who testify in these subject matter areas.  Dr. Karnes will base his opinions upon his review of the discovery materials produced during the course of this case, including but not limited to the Accident Report, photographs, pleadings, depositions and documents produced during the course of discovery. Dr. Karnes will also base his opinions upon his education, testing, experience and training.

**3.    Susan M. Cera, M.D.**

Dr. Cera was deposed on August 26, 2010. Her video deposition may be played in lieu of live trial testimony. Dr. Cera is Christina Thomas' treating colon and rectal surgeon. Dr. Cera testified with respect to Ms. Thomas' injuries sustained when she slipped off the back of the Bombardier RXT. on May 20, 2007. Dr. Cera testified with respect to her care and treatment of Christina Thomas.  Dr. Cera testified with respect to the diagnostic

tests she conducted on Jenny with respect to rectal injury. Dr. Cera opined that Christina Thomas sustained a serious and permanent injury to her right pudendal nerve and external sphincter muscle in the right lateral quadrant. Dr. Cera testified that Christina Thomas' complaints of occasional fecal incontinence are consistent with the nature and extent of her injury. Dr. Cera testified that the reduction in the pudendal nerve function is permanent, as well as the weakened external anal sphincter. Dr. Cera testified that if Christina Thomas's should become pregnant and carry a child to term, she will require a caesarian section. Dr. Cera performed the colostomy reversal surgery. Dr.Cera testified that the injuries sustained by Christina Thomas and the diagnosis which she formed were causally related to the May 20, 2007 accident in question. Dr. Cera opined that the actual mechanism or force that caused Christina Thomas' internal injuries was due to water pressure.  Dr. Cera testified as to the treatment and care received by Christina Thomas was reasonable and necessary and causally related to the accident of May 20, 2007.

**B.**     **Defendant's Expert Witnesses**

**1.**     **Kevin Breen**

Mr. Breen will testify that the Sea-Doo is not unreasonably dangerous or defective.  He will discuss the statistical history of injection injuries based on his thorough knowledge of personal watercraft accident reporting in both the state of Florida and nationally. In addition, he will testify the design of the jet nozzle is without defect and comparable to the designs of all other Bombardier personal watercraft and those nozzles on like products.

Next, Mr. Breen will testify that neither the passenger safety lanyard nor the passenger seat back proposed by Plaintiff are feasible designs and that the putative alternative designs actually increase the risk of injury to Sea-Doo users.  Mr. Breen will testify that what Plaintiff calls a hazard is not identified as such by any Government agency that is responsible for

monitoring boating safety including the Coast Guard - Boating Safety Advisory Counsel, the NTSB and the Red Cross.  Mr. Breen will also testify that the probability of the type of incident Plaintiff alleges is likely to occur once in a million passenger hours aboard personal watercraft.

**2.     Paul Frantz**

Dr. Frantz will testify regarding product labeling, instructions, and human factors issues associated with this case as they relate to the facts of the accident, its causation, and Plaintiff's defect and warning claims.  He will testify regarding the adequacy and role of product warnings and user information on vehicle labels and safety related instructions and information provided with the PWC, and to respond to Plaintiff's experts' testimony.  With respect to issues pertinent to this case, Dr. Frantz will testify that Bombardier's system of information, including materials, such as on-product labels, Sea-Doo Operator's Manual, and the Sea-Doo Safety Video/DVD are reasonable and adequate, not only in terms of content and delivery of the information, but also in terms of the role that it played in promoting safe use of the Sea-Doos.

Dr. Frantz will also address issues pertaining to industry standards and customs regarding personal watercraft and their warnings, the relationship of perception and reaction as well as describing how people react in certain situations like in a moment of perceived hazard and the operator's perception and response time before, during and after the accident sequence.  He will additionally consider and respond to assertions regarding the need for and likely impact of proposed additional or different warnings as raised by the Plaintiff's experts on the subject of human factors and warnings and will respond to the opinions, analysis and work performed by Plaintiff's experts or other lay witnesses who testify in these subject matter areas.  Dr. Frantz will base his opinions upon his review of the discovery materials

produced during the course of this case, including but not limited to the Accident Report, photographs, pleadings, depositions and documents produced during the course of discovery. Dr. Frantz will also base his opinions upon his education, testing, experience and training.

**3.**     **Dr. Sharon Gregorcyk**

Dr. Gregorcyk is a board certified Colon and Rectal Surgeon and Examiner who will testify regarding the extent of plaintiff's physical injuries, her rehabilitation and prognosis including future care.

**4.**     **Ro Baltayan**

Ms. Baltayan is a vocational rehabilitation expert who will testify that Plaintiff is employable in a variety of scenarios including work both outside and inside the home.

**7.**     **STATEMENT AS TO MONEY DAMAGES**

**A.**     **Plaintiff's Statement**

**1.**     **Medical expenses: $ 254,931.45**

**2.**     **Future Medical Expenses: $709,576.00**

**3.**     **Lost Wages: none**

**4.**     **Future Wage Loss: none**

**5.**     **Past Pain And Suffering, Disability, Disfigurement, And Mental Anguish: $1,000,000**

**6.**     **Future Pain And Suffering, Disability, Disfigurement, And Mental Anguish: $1,000,000**

**8.**     **DEPOSITIONS TO BE OFFERED INTO EVIDENCE AT TRIAL**

**A.**     **Plaintiff's Depositions in Case in Chief**

1.   Deposition Susan Cera, MD

2.   Deposition of Michael Burleson, PE

3.   Deposition of Ro Baltayan

4.   Deposition of Sharon Gregorcyk, MD

5.   Deposition of Deposition of George William Smith

6.   Deposition of James Del Sordo

7.   Deposition of Jean Yves LeBlanc

8.   Deposition of Reginald Plante

9.   Deposition of Paul Franz

**B.**   **Defendant's Depositions**

1.   Deposition of Plaintiff- The complete deposition transcript of Plaintiff.

2.   Deposition of George Smith

| Deponent | Date of Deposition | Page/Line Designations |
|---|---|---|
| **Deposition of George Smith** | **March 10, 2009** | Page 5: 22-24<br>Page 6: 11-25<br>Page 7: 10-11; 14-21<br>Page 8: 3-4; 10-11; 14-16<br>Page 9: 7-13; 25<br>Page 10: 1-14; 20-25<br>Page 11: 1-19<br>Page 13: 14-25<br>Page 14<br>Page 15: 1-10; 19-20; 23-25<br>Page 16: 1-9; 14-24<br>Page 17: 4-11; 15-25<br>Page 18: 1-4; 6, 9-14; 16-20; 22-25<br>Page 19: 1, 3, 10-14; 16, 24-25<br>Page 20: 1-5; 7, 15-25<br>Page 21: 1-17; 19-25<br>Page 22: 2-16; 22-25<br>Page 23<br>Page 24: 20-25<br>Page 26: 7-25<br>Page 27 – 29<br>Page 30: 1-17; 24-25<br>Page 31 – 32<br>Page 33: 1-7; 9-13; 14-15, 18-25 |

| Deponent | Date of Deposition | Page/Line Designations |
|---|---|---|
| | | Page 34 – 36<br>Page 37: 1-2; 12-25<br>Page 38 – 42<br>Page 43: 1-2; 12-25<br>Page 44: 1-14<br>Page 45: 1-12<br>Page 46: 10-25<br>Page 47: 1, 13-25<br>Page 48 – 50<br>Page 51: 1, 17-25<br>Page 52: 1, 9-25<br>Page 53: 1, 6-8; 16-25<br>Page 54: 1-7<br>Page 56: 9-25<br>Page 57: 1-7; 11-14; 18-25<br>page 58 – 59<br>Page 60: 7-25<br>Page 61<br>Page 62: 1-6; 22-25<br>Page 63: 1-11<br>Page 64 – 66<br>Page 67: 1-16<br>Page 68: 8-25<br>Page 69: 1-24<br>Page 70: 6-17; 20-25<br>Page 71: 7-15<br>Page 72 – 73<br>Page 74: 1-10; 14-18<br>Page 75: 25<br>Page 76 – 78<br>Page 79: 1-12; 18-25<br>Page 80 – 81<br>Page 82: 1-6; 16-25<br>Page 83<br>Page 84: 1-8 |

3.      Deposition of James Del Sordo

| Deponent | Date of Deposition | Page/Line Designations |
|---|---|---|
| **Deposition of James J. Del Sordo** | **March 10, 2009** | Page 3: 23-24<br>Page 4: 21-23<br>Page 6: 2-3; 6-22<br>Page 8: 6-11<br>Page 9: 19-24<br>Page 10: 24-25<br>Page 11: 1-2<br>Page 14: 1-21 |

| Deponent | Date of Deposition | Page/Line Designations |
|----------|--------------------|------------------------|
|  |  | Page 15: 14-25 |
|  |  | Page 16: 1-3; 11-25 |
|  |  | Page 17: 1-5; 9-25 |
|  |  | Page 18 |
|  |  | Page 19: 1-17 |
|  |  | Page 21: 1-25 |
|  |  | Page 22: 1-6; 21-25 |
|  |  | Page 23 |
|  |  | Page 24: 11-23 |
|  |  | Page 25 |
|  |  | Page 26: 1-12; 15-25 |
|  |  | Page 27 |
|  |  | Page 28 |
|  |  | Page 29: 10-25 |
|  |  | Page 30 – 31 |
|  |  | Page 32: 1-6; 13-15 |
|  |  | Page 33: 12-14; 19-25 |
|  |  | Page 34: 1-12; 15-25 |
|  |  | Page 35 |
|  |  | Page 36: 1-8; 17-25 |
|  |  | Page 37: 1-6 |
|  |  | Page 38: 14-17; 25 |
|  |  | Page 39 –  40 |
|  |  | Page 41: 1-13; 18-25 |
|  |  | Page 42: 1-9 |
|  |  | Page 43: 10-12 |
|  |  | Page 44: 6-7; 14; 17-21 |
|  |  | Page 45 –  46 |
|  |  | Page 47: 1-5; 7-10; 13-25 |
|  |  | Page 48: 1-14; 19-25 |
|  |  | Page 49: 1-21 |
|  |  | Page 50: 8-25 |
|  |  | Page 51: 3-25 |
|  |  | Page 52 – 53 |
|  |  | Page 54: 1-20 |
|  |  | Page 55: 10-25 |
|  |  | Page 56: 3-25 |
|  |  | Page 57 – 69 |
|  |  | Page 70: 23-25 |
|  |  | Page 71: 1-25 |
|  |  | Page 72: 1-20 |
|  |  | Page 73 – 79 |
|  |  | Page 80: 1-7; 19-25 |
|  |  | Page 81 – 100 |
|  |  | Page 101: 1-22 |
|  |  | Page 102: 7-25 |
|  |  | Page 103 – 104 |
|  |  | Page 105: 1-16 |
|  |  | Page 106 – 112 |

| Deponent | Date of Deposition | Page/Line Designations |
|---|---|---|
| | | Page 113: 1-12; 18-25<br>Page 114 – 116<br>Page 117: 2-13<br>Page 119: 2-6<br>Page 129: 15-25<br>Page 130: 1-22<br>Page 131 – 132 |

**9.**   **FACTS DEEMED ADMITTED**

The parties met in good faith to stipulate in accordance with Rule 3.06(b)(2) of the Local Rules of Court to reach an agreement to certain facts or points of law.  The parties anticipate stipulating to additional agreed facts before trial.  Based upon this agreement, the parties thus far stipulate to the following:

**1.**     The accident from which this lawsuit arises occurred on May 20, 2007, in the Gulf of Mexico approximately 1,000 feet from the Vanderbilt Beach Road turnaround in Collier County, Florida.

**2.**     Plaintiff, Christina Lina Thomas, resides in Collier County, Florida.

**3.**     Defendant Bombardier Recreational Products Inc. ("Bombardier") is a Canadian corporation with its principal place of business in Quebec, Canada.  Bombardier manufactured the personal watercraft at issue, a 2006 Bombardier Sea-Doo RXT personal watercraft (the "PWC").

**4.**     Mr. George Smith owned the PWC on the date of the accident.

**5.**     On the date of the accident, Plaintiff and friends Rachel King and Christina Gonzalez went to Vanderbilt Beach.  Before arriving at the beach, Plaintiff had no plans to ride on a personal watercraft.  Plaintiff was dressed in a bikini, and also brought cloth shorts and a tank top.

6.     The weather on May 20, 2007 was sunny, with good visibility.

7.     While Plaintiff was sunbathing, she noticed James Del Sordo and Samantha Smith operating the PWC.

8.     Ms. Smith was an acquaintance of Plaintiff's through high school, and had known Mr. Del Sordo for about one year before the accident.

9.     Mr. Del Sordo and Ms. Smith came onto shore; Plaintiff and Ms. King asked if they could go for a ride on the PWC.

10.     Before taking a ride, Plaintiff and Ms. King obtained permission from Mr. George Smith, the PWC's owner.

11.     Plaintiff, in fact, had no previous experience operating or riding as a passenger on a personal watercraft.  Plaintiff told this to Mr. Del Sordo.

12.     On the day of the accident, Mr. Del Sordo knew that Plaintiff had never been on a personal watercraft before.

13.     On or before the date of the accident, Plaintiff never wore a wetsuit.

14.     Within one or two minutes of riding on the PWC, Plaintiff lost her grip, and fell backward into the water, sustaining injuries.

15.     **CONCISE STATEMENT OF APPLICABLE PRINCIPLES OF LAW ON WHICH THERE IS AN AGREEMENT**

None at this time.

16.     **CONCISE STATEMENT OF ISSUES OF FACT WHICH REMAIN TO BE LITIGATED**

A.     **Plaintiff's Statement**

1.     Whether the 2006 Bombardier Sea-Doo RXT personal watercraft was defective and unreasonably dangerous by virtue of design, manufacture or placement of warning.

2.     Whether the Defendant is Strictly Liable to the Plaintiff.

23

3. Whether any of Plaintiffs's alleged injuries were proximately caused by the negligence or comparative negligence of third parties George Smith and/or James Del Sordo.

4. Damages, if any, of Plaintiff.

5. Collateral source set-off(s), if any.

6. Mitigation of damages, if any, by Plaintiff.

**B. Defendants' Statement**

1. Whether the 2006 Bombardier Sea-Doo RXT personal watercraft was defective and unreasonably dangerous by virtue of design, manufacture or placement of warning.

2. The extent to which pressurized water from the PWC's propulsion jet nozzle caused Plaintiff's injuries.

3. The extent to which ambient water caused Plaintiff's injuries.

4. Whether the acts Plaintiff were the sole proximate cause or a contributing cause to the subject accident.

5. Whether any of Plaintiff's alleged injuries were proximately caused by the negligence or comparative negligence of third parties including Mr. George Smith and Mr. James Del Sordo.

6. Damages, if any, of Plaintiff.

7. Collateral source set-off(s), if any.

8. Whether the Plaintiff's injuries were the result of misuse of the PWC.

9. Mitigation of damages, if any, by Plaintiff.

10. Whether James Del Sordo was wave jumping at the time of the accident as indicated in the police report.

11. Whether Mr. Del Sordo's inattention contributed to the accident as indicated in the police report.

12. Whether Plaintiff did not read any warning labels affixed to the PWC at any time before the accident.

13. Whether, on the day of the accident, the PWC operator, Mr. Del Sordo, advised Plaintiff that all riders must wear a wet suit bottom or clothing that provides equivalent protection.

14. Whether before Plaintiff rode with Mr. Del Sordo on the PWC, he pointed out any of the on-board warning labels to Plaintiff.

15. Whether anything prevented Plaintiff from seeing the on-product warning label on the date of the accident.

16. Whether Mr. Del Sordo  advised Plaintiff of the on-product warning label on the date of the accident.

17. The speed of the PWC at the time of Plaintiff's accident.

18. The height of the waves at the time of Plaintiff's accident.

## 17.   CONCISE STATEMENT OF ISSUES OF LAW WHICH REMAIN FOR DETERMINATION BY THE COURT

Whether the alleged dangerous condition was open, obvious and whether Plaintiff knew

or in the exercise of reasonable care should have known of it and taken measures to avoid it.

## 18.   CONCISE STATEMENT AND DISAGREEMENT AS TO FEDERAL RULES OF EVIDENCE OR FEDERAL RULES OF CIVIL PROCEDURE

There are no known disagreements as to the applicability of the Federal Rules of

Evidence or Federal Rules of Civil Procedure.

## 19.   MOTIONS OR OTHER MATTERS WHICH REQUIRE ACTION BY THE COURT

**A.   Joint Motions**

1. Joint Motion To Permit Use Of Electronic Equipment at Trial.

**B.   Plaintiff's Motions**

1. Motion in Limine to Exclude Testimony of  Paul Franz [DE 77]

**2.** Motion in Limine to Exclude Testimony regarding U.S. Coast Guard [DE 78]

**C.**     **Defendants Motions**

1.     Motion in Limine regarding Exclusion of Reference or Introduction to Newspaper Articles and Other Media Reports [D.E. 68].

2.     Motion in Limine to Exclude Evidence Regarding Prior PWC Accidents and Lawsuits [D.E. 69].

3.     Motion in Limine regarding Exclusion of Safety Videos [D.E. 70].

4.     Motion in Limine regarding Exclusion of Graphic Injury Photographs [D.E. 71].

5.     Motion in Limine to Exclude Testimony of Edward Karnes [D.E. 72].

6.     Motion in Limine to Preclude Plaintiff from Presenting Evidence of Damages Based On Future Medical Care Or Vocational Restriction [D.E. 73].

7.     Motion in Limine regarding Precluding Evidence of Joint Defense/Common Interest Agreement [D.E. 74].

8.     Motion in Limine to Exclude Full Amount of Plaintiff's Medical Bills [D.E. 75]

Dated: September 10, 2010

| s/ Robert A. Selig | s/ Michael R. Holt |
|---|---|
| BOONE & DAVIS, P.A. | SCOTT M. SARASON |
| 2311 North Andrews Avenue | Florida Bar No. 0394718 |
| Fort Lauderdale, FL 33311 | ssarason@rumberger.com |
| Telephone: 954-566-9919 | MICHAEL R. HOLT |
| Fax: 954-566-2680 | Florida Bar No. 0483450 |
| E-mail: raselig@boonedavis.com | mholt@rumberger.com |
| | Brickell Bayview Centre, Suite 3000 |
| | 80 S.W. 8th Street (33130-3037) |
| | Post Office Box 01-9041 |
| | Miami, Florida  33101 |
| | Telephone:  (305) 358-5577 |
| | Telecopier:  (305) 371-7580 |
| | |
| Counsel for Plaintiff | Counsel for Defendant, Bombardier Recreational Products |

1147909